**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **KRISTY VARGAS**, individually and on behalf of all other similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>**J & J SNACK FOODS, CORP.** and **DADDY RAY'S, INC.**, jointly and severally,<br><br>Defendants. | Case No.: 22-cv-1187<br><br>Hon.:<br><br>Jury Trial Demanded |

**COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiff, KRISTY VARGAS ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendants, J & J SNACK FOODS, CORP. ("J & J") and DADDY RAY'S, INC. ("Daddy Ray's") (collectively, "Defendants"), and states as follows:

**INTRODUCTION**

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all employees similarly situated, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, Missouri's wage laws, Mo. Rev. Stat. §§ 290.500, *et seq.*, and common law.

2. Defendants own and operate a commercial bakery and distribution center in Moscow Mills, Missouri, where they produce, sell, and distribute baked goods to their customers.

3. In order to serve their customers, Defendants employ hundreds of non-exempt, hourly production employees in various positions including, but not limited to, Mixers, Palletizers,

1

Packers, Wrappers, and Cleaners (hereinafter, "Production Workers").

4. Defendants automatically deducted 30-minutes from all of their Production Workers' time records for unpaid meal periods.

5. However, Defendants did not provide their Production Workers with 30-minute meal periods. Instead, Defendants maintained a common policy and practice of only providing their Production Workers with 20-minute meal periods. Moreover, the Production Workers spent much of that 20-minute period walking from their work station to a wash station where they were required to take off their personal protection equipment ("PPE") and wash their hands before taking their lunch (on the premises). They were then required to wash their hands and put on their PPE before walking back to their work stations.

6. Defendants' Production Workers were required to return to their work stations within the allotted 20-minute period or they were subject to verbal and/or written discipline.

7. As a result of Defendants' policy and practice, the Production Workers were denied full, lawful compensation for all their work. The unpaid 30-minutes was legally compensable and often amounted to overtime where the time was in addition to the Production Workers' full-time schedules (*i.e.,* 40 hours per week).

8. Defendants' Production Workers performed similar or related job duties, were paid in a similar manner, worked in the same location, and were subject to the same compensation policies and practices.

9. Defendants had knowledge, and/or could have easily determined with reasonable diligence, that Production Workers did not receive a full, uninterrupted 30-minute meal period, and could have properly compensated Plaintiff and the Production Workers for their time. However, Defendants deliberately failed to do so.

10. Accordingly, Plaintiff brings this action individually, and on behalf of all other similarly situated Production Workers who worked for Defendants during the applicable statutory period, in order to recover unpaid wages and overtime, liquidated damages, attorneys' fees and costs, and any other remedies to which they may be entitled.

## JURISDICTION

11. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq*.

12. Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

13. Defendants' annual sales exceed $500,000 and Defendants have more than two employees, so the FLSA applies in this case on an enterprise basis. Defendants' non-exempt, hourly employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

14. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

15. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

16. This Court has personal jurisdiction over Defendants because Daddy Ray's is a Missouri Corporation and maintains its principal place of business in this District.

## VENUE

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because

Defendants conduct business in this District, and a substantial portion of the events forming the basis of this suit (including implementation of the illegal pay practices alleged in this Complaint) occurred in the Eastern District of Missouri.

18. All of the alleged causes of actions can be determined in this judicial proceeding and will provide economy, fairness, and convenience to the parties.

## INTRADISTRICT ASSIGNMENT

19. A substantial part of the events or omissions giving rise to the claims alleged herein occurred in Lincoln County, Missouri; therefore, this action is properly assigned to the Eastern Division.

## PARTIES

20. Plaintiff, Kristy Vargas (f/k/a Kristy Martinez), is a resident of Missouri and was employed by Defendants as an hourly Production Worker at Defendants' production facility in Moscow Mills, Missouri from October 1, 2021 to June 30, 2022. Plaintiff signed a consent form to join this lawsuit, which is attached hereto as *Exhibit A*.

21. Additional putative Collective members were or are employed by Defendants as hourly Production Workers during the past three years and their consent forms will also be filed in this case.

22. Defendant J & J is a New Jersey corporation established in 1971 and headquartered in Pennsauken, New Jersey. Defendant J &J's principal mailing address is 6000 Central Highway, Pennsauken, New Jersey.

23. According to its website, Defendant J & J "provides nutritious and affordable branded-niche snack foods to foodservice and retail supermarket outlets across the U.S. Its products include such icons as SUPERPRETZEL and ICEE, fan favorites like Luigi's Italian Ice,

4

The Funnel Cake Factory Funnel Cakes, and Tio Pepe's Churros, as well as a host of other products spanning baked goods, frozen beverage and frozen novelties categories", including Daddy Ray's Cookies. *See* https://jjsnack.com/about/ (last visited on 11/3/22).

24. Defendant Daddy Ray's, Inc., is a Missouri corporation, incorporated on January 9, 2002, and headquartered in Moscow Mills, Missouri. Defendant Daddy Ray's principal mailing address is 1070 Industrial Court, Moscow Mills, Missouri.

25. Defendant Daddy Ray's specializes in producing and packaging fruit bars in various sizes and flavors, cereal bars, caddie packs, cookies, and pallet display programs. *See* https://www.bloomberg.com/profile/company/0108220D:US (last visited 11/3/22).

26. Defendant Daddy Ray's maintains a commercial bakery and distribution center from which all of Daddy Ray's Cookies are produced and distributed throughout North America.

27. Defendant Daddy Ray's is a fully owned subsidiary of Defendant J & J since its acquisition/merger in approximately 2007.

28. Defendants are "joint employers" within the meaning of the FLSA, and have, to their mutual financial benefit and competitive business advantage, harmed Plaintiff and other Production Workers in violation of the FLSA and Missouri law.

29. Defendants jointly employed hundreds of hourly Production Workers – including Plaintiff – in Missouri during the last three years to perform services, which include prepping, mixing, and packaging goods for distribution.

## FACTUAL ALLEGATIONS

30. Throughout her employment with Defendants, Plaintiff was a full-time Production Worker who worked in Defendants' Moscow Mills, Missouri facility.

31. Defendants compensated Plaintiff and the other Production Workers on an hourly

5

basis and classified them as non-exempt employees under the FLSA.

32. While employed by Defendants, Plaintiff earned in excess of $17.00 per hour.

33. Defendants paid Plaintiff and the other Production Workers on a weekly basis.

34. Throughout Plaintiff's employment with Defendants, her job duties as a Production Worker included mixing, packing, palletizing, wrapping, casing, running the knives, running the kibbler, and cleaning.

35. Defendants maintained a policy and practice of automatically deducting 30 minutes from Plaintiff's and the other Production Workers' time records for an unpaid meal period in connection with each work shift.  As such, Plaintiff and the other Production Workers were supposed to receive a full, uninterrupted 30-minute unpaid meal period.

36. However, Defendants did not provide their Production Workers with 30-minute meal periods.  Instead, Defendants maintained a common policy and practice of only providing their Production Workers with 20-minute meal periods.

37. When their 20-minute meal period commenced, Plaintiff and the other Production Workers:

- Left their work stations and walked to the other side of the facility to a room containing the wash station (approximately a 5-minute walk);

- Once at the wash station, waited in line for another 2-3 minutes because there were only 2 sinks and all Production Workers went on lunch at the same time;

- When it was their turn, they removed/discarded their PPE (i.e., hairnet, earplugs, hardhats, apron, etc) and washed their hands;

- From the wash station, they walked into the break room and then either went upstairs to get their lunch from the locker room or waited in line at the vending machines; and

- Proceeded outside to the picnic table area or stayed in the break room.

38. Defendants prohibited Plaintiff and the other Production Workers from leaving the

6

premises or sitting in their vehicles during their 20-minute meal period.

39. Towards the conclusion of their 20-minute meal period, Plaintiff and the other Production Workers:

- Re-entered the building/left the break room;
- Returned any personal belongings to their locker;
- Proceeded to the room containing the wash station;
- Waited in line for a turn at the wash station (approximately 2-3 minutes);
- Put on their PPE (i.e., hairnet, earplugs, hardhats, apron, etc) and washed their hands;
- Walked back to their work stations on the other side of the facility (approximately a 5-minute walk); and
- Once at the workstation, resumed their job duties.

40. Defendants' Production Workers were required to return to their work stations by the end of the 20-minute meal period or they were subject to verbal and/or written discipline.

41. When Plaintiff Vargas inquired with Defendants about the 30-minute deduction for meal periods, Defendants' management explained only that "this is just the rule at Daddy Ray's." Plaintiff was given no further explanation.

42. Under the FLSA, in order to deduct an unpaid 30-minute meal period from an employee's compensable time, the employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be ***completely relieved*** from duty for the purposes of eating regular meals. Ordinarily, 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

7

(emphasis added).

43. Defendants failed to provide Plaintiff and the other Production Workers with *bona fide* meal periods under the FLSA.

44. Defendants also failed to pay Plaintiff and the other Production Workers for the compensable 20-minute breaks they did receive. 29 C.F.R. § 785.18 states:

> Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. ***They must be counted as hours worked***. Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time. (emphasis added).

45. Defendants did not require Plaintiff and the other Production Workers to clock in and out for their meal periods; however, Defendants provided their supervisors and leads with stopwatches, and instructed them to time the Production Workers' meal periods to ensure compliance with Defendants' 20-minute meal period rule.

46. Plaintiff Vargas complained to Defendants' management about this practice on several occasions, including to her direct supervisor, about the lack of a full and uninterrupted 30-minute meal period. Plaintiff was informed, "that doesn't happen here" and was told that she was on "thin ice" when she did try to take a full 30-minute meal period. Moreover, Defendant threatened Plaintiff with the loss of her job if she incurred additional tardy marks relative to the 20-minute meal period.

47. Defendants had express and constructive knowledge that Plaintiff and the other Production Workers were not allowed to take a full 30-minute, *bona fide* meal period.

48. Accordingly, Defendants knowingly and purposely failed to provide Plaintiff and the other Production Workers with bona fide meal periods, despite automatically deducting 30 minutes from their time records.

8

49. As a result, Plaintiff's and the other Production Workers' meal periods amounted to compensable breaks lasting 20 minutes or less.

50. Defendants' systemic policy and practice resulted in Plaintiff and the other Production Workers not being paid for all compensable time, including their overtime in violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

51. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on her own behalf and on behalf of:

> *All current and former hourly production workers who worked in Defendants' Moscow Mills, Missouri facility at any time during the last three years.*

(hereinafter referred to as the "Collective"). Plaintiff reserves the right to amend this definition if necessary.

52. Excluded from the Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside sales persons.

53. With respect to the claims set forth in this Complaint, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies, or plan; and (c) their claims are based upon the same factual and legal theories.

54. The employment relationships between Defendants and every Collective member are the same and differ only by name, job title, and rate of pay. The key issue – the amount of compensation owed to each employee – does not vary substantially among the Collective

9

members.

55. The key legal issues are also the same for every Collective member, to wit: whether the automatically deducted and unpaid 30-minute meal periods were compensable under the FLSA.

56. Plaintiff estimates that the putative Collective members, including both current and former employees over the relevant period, will include several hundred members. The precise number of putative Collective members should be readily available from a review of Defendants' personnel and payroll records.

57. Pursuit of this action on a collective basis will provide the most efficient mechanism for adjudicating the claims of Plaintiff and the proposed Collective members.

58. The Court should conditionally certify the proposed Collective for purposes of authorizing a written notice regarding the pendency of this collective action to the proposed Collective members so they can learn about this action and exercise their right to opt-in, if they so desire.

59. Plaintiff Vargas should be appointed to serve as representative of those who consent to participate in this collective action.

## RULE 23 CLASS ACTION ALLEGATIONS

60. Plaintiff also brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> *All current and former hourly production workers who worked in Defendants' Moscow Mills, Missouri facility at any time during the applicable statute of limitations period.*

(hereinafter referred to as the "Rule 23 Class"). Plaintiff reserves the right to amend the putative class definition if necessary.

61. The Rule 23 Class members are so numerous that joinder of all Rule 23 Class

members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendants' personnel and payroll records.

62.     There is a well-defined community of interest among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual Rule 23 Class members. These common legal and factual questions include, but are not limited to, whether Rule 23 Class members are owed wages in connection with the automatically deducted 30-minutes meal periods and, if so, the appropriate amount thereof.

63.     Plaintiff's claims are typical of those of the Rule 23 Class in that she and all other Rule 23 Class members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same policies, practices, promises, and course of conduct as all other Rule 23 Class members' claims, and her legal theories are based on the same legal theories as all other Rule 23 Class members.

64.     Plaintiff will fully and adequately protect the interests of the Rule 23 Class and has retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

65.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout Missouri.

66. This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case, and Defendants have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

67. Because the elements of Fed. R. Civ. P. 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) ("By its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

68. Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Class, and because declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification under Fed. R. Civ. P. 23(b)(2) is also appropriate.

## COUNT I

### VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.* – FAILURE TO PAY OVERTIME

69. Plaintiff re-alleges and incorporates all previous paragraphs herein.

70. At all times relevant to this action, Defendant J & J was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

71. At all times relevant to this action, Defendant Daddy Ray's was an employer under 29 U.S.C. § 203(d) of the FLSA, subject to the provisions of 29 U.S.C. § 201, *et seq*.

72. Since the 2007 acquisition/merger, Defendants were also joint "employers" of the Production Workers under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*.; 29 C.F.R. § 791.2.

73. Defendants were engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

74. At all times relevant to this action, Plaintiff and the proposed Collective members were Defendants' "employees" within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

75. Plaintiff and the proposed Collective members either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

76. Plaintiff and proposed Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

77. At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the proposed Collective members to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

78. At all times relevant to this action, Defendants failed to compensate Plaintiff and the proposed Collective members for compensable meal or rest periods.

79. Plaintiff and the proposed Collective members' unpaid 30-minute meal periods actually lasted no longer than 20 minutes, and were more akin to a compensable rest period; therefore, Plaintiff and the proposed Collective members should have been compensated for the entirety of their unpaid meal periods.

80. In the aggregate, the amount of Plaintiff's and proposed Collective members' uncompensated time amounted to substantial uncompensated time every week and, aggregated over the three-year statutory period, was not *de minimis*.

81. In workweeks where Plaintiff and the other proposed Collective members worked at least 40 hours, the uncompensated off-the-clock time should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage. *See* 29 U.S.C. § 207.

82. Defendants' violations of the FLSA were knowing and willful. Defendants knew

or should have known that Plaintiff and proposed Collective members were only being permitted 20-minute unpaid meal periods, and Defendants could have properly compensated Plaintiffs and the proposed Collective members for the work they performed, but did not.

83. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid overtime wages, an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II

### VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 211, *et seq*., FAILURE TO MAINTAIN REQUIRED RECORDS

84. Plaintiff re-alleges and incorporates all previous paragraphs herein.

85. The FLSA requires all employers to keep all payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). See 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

86. As an employer, Defendants were subject to the FLSA's recordkeeping requirements.

87. Defendants' obligations were to maintain and preserve payroll or other records containing, without limitation, the total hours worked by each employee each workday and total hours worked by each employee each workweek. 29 C.F.R § 516.2.

88. Upon information and belief, Defendants maintained corporate policies and/or practices of evading pay for its non-exempt employees by failing to track, and maintain records of, their actual work time.

89. Defendants failed to maintain and preserve accurate timesheets and payroll records in connection with their Production Workers' employment as required by 29 C.F.R § 516.2.

90. When the employer fails to keep accurate records of the hours worked by its employees, the rule in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88, 66 S. Ct. 1187, 1192 (1946) is controlling. That rule states:

> [w]here the employer's records are inaccurate or inadequate . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

91. The Supreme Court set forth this test to avoid placing a premium on an employer's failure to keep proper records in conformity with its statutory duty, thereby allowing the employer to reap the benefits of the employees' labors without proper compensation as required by the FLSA. Where damages are awarded pursuant to this test, "[t]he employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with . . . the Act." *Id.*

92. As a result of Defendants' recordkeeping violations, Plaintiff seeks a declaratory judgment and order that the *Anderson* burden-shifting framework applies in this case, along with all other relief just and appropriate in the circumstances.

## COUNT III

**VIOLATIONS OF THE MISSOURI WAGE LAWS**
**Mo. Rev. Stat. §§ 290.500, *et seq*. – FAILURE TO PAY OVERTIME**

93. Plaintiff re-alleges and incorporates all previous paragraphs herein.

94. Plaintiff brings this action under the Missouri wage laws ("MWL"), §§ 290.500, *et seq*, as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class:

> *All current and former hourly production workers who worked in Defendants' Moscow Mills, Missouri facility at any time during the applicable statute of limitations period.*

95. Plaintiff, and all others similarly situated who are or were employed in the State of Missouri, are "employees" as defined in MWL, Mo. Rev. Stat. § 290.500(3).

96. Defendants are, and were, an "employer" as defined in MWL, Mo. Rev. Stat. § 290.500(4).

97. The MWL, Mo. Rev. Stat. § 290.505.1, requires all employers to pay employees 1.5 times their regular rate of pay for all hours worked in excess of forty per workweek.

98. During the time period applicable to the Class, and continuing through the present, Defendants failed to pay their Production Workers overtime premium pay for all their overtime hours worked.

99. Plaintiff and the Class are entitled to recover in a civil action the unpaid balance of the full amount of the overtime pay for all hours worked.

100. Class action treatment of Plaintiff's MWL claim is appropriate because, as alleged herein, the Fed. R. Civ. P. 23 class action requisites are satisfied.

101. As the direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Class have suffered, and will continue to suffer, a loss of income in the form of lost overtime pay. In turn, under Mo. Rev. Stat. § 290.527, Plaintiff and the Class are entitled to liquidated damages, attorneys' fees, and costs, and any other remedies available in connection with this claim.

## COUNT IV

**BREACH OF CONTRACT**
**(On Behalf of the Rule 23 Class)**

102. Plaintiff re-alleges and incorporates all previous paragraphs herein.

103. At all times relevant to this action, Defendants had a binding and valid contract

with Plaintiff and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiff and the Rule 23 Class members performed on Defendants' behalf.

104. Defendants' contractual promises to pay Plaintiff and each Rule 23 Class member's applicable hourly rate is evidenced by, among other things, each earnings statement issued to Plaintiff and the Rule 23 Class members.

105. Plaintiff and every other Rule 23 Class member accepted the terms of Defendants' contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift, including the unpaid work that was required of them, accepted by Defendants, and that they performed, in connection with the work activities described herein.

106. By not paying Plaintiff and every other Rule 23 Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendants systematically breached their contracts with Plaintiff and each Rule 23 Class member.

107. Plaintiff's and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure "gap time" claims).

108. As a direct and proximate result of Defendants' contractual breaches, Plaintiff and the Rule 23 Class members have been damaged in an amount to be determined at trial.

## COUNT V

**UNJUST ENRICHMENT**
**(On Behalf of the Rule 23 Class)**

109. Plaintiff re-alleges and incorporates all previous paragraphs herein.

110. This Count is pled in the alternative to Count IV, *supra*, pursuant to Fed. R. Civ. P.

8(d)(2)-(3).

111.   At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Class members performed for the benefit of Defendants.

112.   Plaintiff and every other Rule 23 Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

113.   By not paying Plaintiff and every other Rule 23 Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

114.   Plaintiff and the Rule 23 Class members performed off-the-clock work tasks at the request of, without objection by, and for the benefit of, Defendants.

115.   Defendants received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Class member and enjoyed the benefits derived therefrom, including increased profits, without having paid for the same.

116.   Upon information and belief, Defendants used the monies owed to Plaintiff and every other Rule 23 Class member to finance its various business ventures or pay its equity owners.

117.   Defendants were unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Class performed for Defendants' benefit, without having paid Plaintiff and the Rule 23 Class for the same.

118.   Plaintiff and the Rule 23 Class suffered detriment due to Defendants' failure to pay them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

119. As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Class member suffered damages, including but not limited to, loss of wages.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs request the following relief:

a. Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein;

b. Certifying this action as a class action (for the Rule 23 Class) under Fed. R. Civ. P. 23(b)(2) and (b)(3) with respect to Plaintiff's Missouri wage law claims, breach of contract claims, and unjust enrichment claims (Counts III-V);

c. An Order compelling Defendants to disclose in computer format, or in print if no computer-readable format is available, the names and contact information of all proposed Collective members, and authorizing Plaintiff to send notice of this action to all those individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their rights by law to join and participate in this lawsuit;

d. Designating Plaintiff as the representative of the FLSA Collective and the Rule 23 Class, and undersigned counsel as Class counsel for the same;

e. Declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. Declaring Defendants violated the MWL;

g. Declaring Defendants' violations of the FLSA and MWL were willful;

h. Declaring Defendants breached their contracts with Plaintiff and the Rule 23 Class members (or, in the alternative, that Defendants were unjustly enriched) by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i. Granting judgment in favor of Plaintiffs as against Defendants and awarding Plaintiff and the proposed Collective members the full amount of damages and liquidated damages available by law;

j. Awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute; and

k. Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, Kristy Vargas, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  November 8, 2022                   Respectfully Submitted,

*/s/ Brendan J. Donelon*
Brendan J. Donelon
Donelon, P.C.
4600 Madison, Ste. 810
Kansas City, Missouri 64112
Tel: (816) 221-7100
brendan@donelonpc.com

Matthew L. Turner (pro hac vice anticipated)
Jesse L. Young (pro hac vice anticipated)
Kathryn E. Milz (pro hac vice anticipated)
Sommers Schwartz, P.C.
One Towne Square, Suite 1700
Southfield, Michigan 48076
Tel: (248) 355-0300
jyoung@sommerspc.com
kmilz@sommerspc.com

*Counsel for Plaintiffs and the
Proposed Collective and Class*